UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOHN MORGAN-REED, *individually and on behalf of all others similarly situated*,<br>Plaintiffs,<br><br>-v-<br><br>RACKSPACE TECHNOLOGY, INC., GAJEN KANDIAH, and MARK MARINO,<br>Defendants. | 26-CV-6491 (JPO)<br><br><u>MEMORANDUM AND ORDER</u> |

J. PAUL OETKEN, District Judge:

Before the Court are motions to appoint lead plaintiffs and lead counsel in a putative securities class action against Rackspace Technology, Inc. ("Rackspace") and its officers and directors. For the reasons set forth below, the Court appoints John Morgan-Reed and Joanna Karg as lead plaintiffs and Glancy Prongay Wolke & Rotter LLP ("GPWR") and Schall, Brown & Schwartz LLP ("SBS") as co-lead counsel. (ECF No. 10.)

## I. Background

Plaintiff John Morgan-Reed commenced this action on July 29, 2026. (ECF No. 1 ("Compl.").) The complaint alleges that Defendants made materially false and/or misleading statements and failed to disclose material adverse facts about Rackspace's business, operations, and prospects, concerning the impacts of Rackspace's enterprise AI efforts on its capacity and capital. (*Id.* ¶ 7.) Specifically, the complaint alleges that Rackspace announced a multiyear partnership to create an Enterprise AI Cloud on May 7, 2026 and held an earnings call on that same day wherein the CEO, Defendant Gajen Kandiah, announced that the partnership gave the company "confidence in the full year Private Cloud growth profile." (*Id.* ¶¶ 3-4.) The complaint then alleges that on July 9, 2026, before the market opened, Rackspace published second quarter

2026 financial results along with a "strategic and financial update," which revealed that its AI investments would require a significant re-prioritization of resources. (*Id.* ¶ 5.) Based on those financial results, Rackspace reduced its full year 2026 revenue guidance by $150 million, as well as its full year 2026 Private Cloud revenue outlook by $25 million. (*Id.*) The complaint alleges that Rackspace's stock price then fell by $2.21 that same day (that is, by 33.6%). (*Id.* ¶ 6.) The complaint seeks to represent a class of all parties and entities that purchased or otherwise acquired Rackspace securities between May 7, 2026 and July 8, 2026 (the "Class Period") and who suffered losses when Rackspace's stock price fell. (*Id.* ¶ 34.) In short, the complaint alleges that Defendants violated § 10(b) and § 20(a) of the Securities Exchange Act of 1934. (*Id.* ¶ 9.) *See* 15 U.S.C. §§ 78j(b), 78t(a)); 17 C.F.R. § 240.10b-5.

On July 29, 2026, Plaintiff Morgan-Reed published a notice via his counsel GPWR informing putative class members of the action and their right to file a motion for appointment as lead plaintiff within 60 days. (ECF No. 12-1.) On September 28, 2026, Plaintiffs Morgan-Reed and Joanna Karg ("Movants") filed a motion to be appointed as lead plaintiffs, with GPWR and SBS to be appointed co-lead counsel. (ECF No. 10.) Movants submitted a damages analysis in support of that motion indicating that they had collectively experienced a loss of $117,750.68 due to the decrease in Rackspace's share price during the Class Period. (ECF No. 12-3 at 2.) The same day, Douglas Johnson filed a competing motion to be appointed lead plaintiff, with the Rosen Law Firm to be appointed lead counsel. (ECF No. 13.) Johnson filed a damages analysis demonstrating a loss of $489.88 as a result of the decrease in Rackspace's share price during the Class Period. (ECF No. 14-3 at 2.) However, Johnson withdrew his motion on October 12, 2026, acknowledging that he did not appear to be the movant with the largest financial interest. (ECF No. 15 at 1.) No other motions to be appointed lead plaintiff were filed.

**II. Legal Standard**

Under the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), the Court is to appoint as lead plaintiff the member or members of the purported class who is or are the "most capable of adequately representing the interests of class members"—i.e., who constitute the "most adequate plaintiff." 15 U.S.C. § 78u-4(a)(3)(B)(i). The PSLRA establishes a rebuttable presumption that the "most adequate plaintiff" is the "person or group of persons" who (1) "has either filed the complaint or made a motion in response to a notice"; (2) "in the determination of the court, has the largest financial interest in the relief sought by the class"; and (3) "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." *Id.* § 78u-4(a)(3)(B)(iii)(l). With respect to Rule 23, at this stage of litigation "a moving plaintiff [need make] only . . . a preliminary showing that the adequacy and typicality requirements have been met." *Freudenberg v. E*Trade Fin. Corp.*, No. 7-CV-8538, 2008 WL 2876373, at *5 (S.D.N.Y. July 16, 2008). After the Court identifies a presumptive lead plaintiff, the presumption "may be rebutted only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff . . . will not fairly and adequately protect the interests of the class; or . . . is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

**III. Discussion**

Movants are the most adequate plaintiffs in this action. In accordance with the PSLRA's first requirement, Morgan-Reed filed the complaint in this action (Compl.), and Movants submitted a timely motion in response to the PSLRA notice (ECF No. 10). With respect to the second requirement, "[w]hile the PSLRA does not provide any explicit guidance about how to calculate the size of a given plaintiff's financial interest, courts in this Circuit have traditionally examined four factors: (1) the number of shares purchased during the class period; (2) the

number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate loss suffered during the class period." *Chun Huang v. Canntrust Holdings Inc.*, No. 19-CV-6396, 2020 WL 9077513, at *2 (S.D.N.Y. Apr. 16, 2020) (cleaned up). Here, Movants face no comparators, but Johnson—despite his withdrawn motion—provides a helpful comparison. First, Movants attest that they purchased 16,100 and 22,134 shares of Rackspace stock, respectively, during the Class Period (ECF No. 12-3 at 2),[1] whereas Johnson attests that he purchased only 129 shares during that same period (ECF No. 14-3 at 2). Second, Movants attest that they expended $131,698 and $136,091.14, respectively, on Rackspace securities (ECF No. 12-3 at 2), whereas Johnson attests that he expended only $995.88 (ECF No. 14-3 at 2). Finally, Movants' combined financial harm of $117,150.68 (respectively, $49,204.93 and $68,545.75) far outpaces Johnson's financial harm of less than $500. (*Compare* ECF No. 12-3 at 2 *with* ECF No. 14-3 at 2.) Under these factors, Movants appear to indisputably be the parties with the largest financial interest.

Movants also make preliminary showings of adequacy and typicality under Rule 23 that are sufficient for this stage of litigation. Typicality is met if the plaintiff's claims "arise . . . from the same course of events" as other putative class members. *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992). Here, both Morgan-Reed and Karg seek recovery for the decline in the price of Rackspace's securities during the Class Period, which is the same recovery sought by all class members based on the same course of events. Thus, their claims are typical of the putative class. Adequacy is met if "(1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) there is no conflict between the proposed lead plaintiff and the members of the class; and (3) the proposed lead plaintiff has a sufficient interest

[1] Morgan-Reed sold 15 of these shares during the Class Period. (ECF No. 12-3 at 2.)

in the outcome of the case to ensure vigorous advocacy." *Foley v. Transocean Ltd.*, 272 F.R.D. 126, 131 (S.D.N.Y. 2011). Here, Morgan-Reed and Karg's significant financial losses provide adequate incentive to vigorously represent the class claims, and there is no evidence of conflict between their interests and the interests of the class. As discussed below, their choices of class counsel—GPWR and SBS—are also both qualified and experienced. The adequacy requirement is therefore satisfied at this stage in the litigation.

Additionally, though Movants are two unrelated investors, "[t]he majority of courts, including those in this District, . . . permit[] unrelated investors to join together as a group seeking lead-plaintiff status on a case-by-case basis, if such a grouping would best serve the class." *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 392 (S.D.N.Y. 2008); *see also Peters v. Jinkosolar Holding Co.*, No. 11-CV7133, 2012 WL 946875, at *6-7 (S.D.N.Y. Mar. 19, 2012) ("The PSLRA itself plainly contemplates the appointment of a group of individuals as lead plaintiff. . . . Courts appear to generally agree that a group comprising five or fewer members is appropriate."). Such a grouping does so here. There is no evidence that Movants joined together "to manufacture a high enough financial interest to beat out any other competing lead plaintiffs," *id.* at *8, and in fact, both Morgan-Reed and Karg have attested to similarly large financial interests that each independently far outclass that of the only other movant to have sought lead-plaintiff status. And "where the group comprises the class members with, far and away, the largest financial interest of any individual or group (that has otherwise come forward), then the policy is not disserved by allowing those individuals to join together." *Id.* at *9. Moreover, "[c]ourts also look for evidence that the group will be able to function cohesively." *Id.* at *7. That evidence is plain here: Movants have "agreed to exercise joint decision-making and to work together if appointed" as lead plaintiffs, as well as to "make all

efforts, in good faith, to reach consensus with respect to litigation decisions." (ECF No. 12-4 at 4-5.) It best serves the class for Movants to be lead plaintiffs here. No arguments have been made that Movants are subject to any unique defenses that would prevent them from adequately representing the class. Their presumptive lead-plaintiff status has thus not been rebutted.

Finally, with respect to lead counsel, "[t]he PSLRA evidences a strong presumption in favor of approving a properly [] selected lead plaintiff's decisions as to counsel selection and counsel retention." *Varghese*, 589 F. Supp. 2d at 398 (quotation marks omitted). Movants have selected GPWR and SBS, each of which has extensive experience in securities litigation (ECF No. 12-5; ECF No. 12-6), and no arguments have been made to rebut the presumption in favor of crediting the Movants' choices. The Court thus approves both selections as lead counsel.

## IV. Conclusion

For the foregoing reasons, John Morgan-Reed and Joanna Karg's motion to be appointed lead plaintiffs and to appoint Glancy Prongay Wolke & Rotter LLP and Schall, Brown & Schwartz LLP as co-lead counsel is GRANTED.

The Clerk of Court is directed to close the motions at Docket Numbers 10 and 13.

SO ORDERED.

Dated: October 13, 2026
New York, New York

J. PAUL OETKEN
United States District Judge